<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

_____
:
SUPER 8 MOTELS, INC., a Delaware     :
Corporation,                                            :
                                                               :
                Plaintiff,                           :    Civil Action No. 07-5194 (JAG)
                                                               :
               v.                                      :    **OPINION**
                                                               :
AUM CORPORATION OF PAINTED      :
POST, NEW YORK, a New York          :
Corporation; KISHOR PATEL;             :
HARISH PATEL; BHARTI PATEL;       :
TARULATA PATEL;                            :
and SANJAY PATEL, individually,       :
                Defendants.                      :
_____:

<u>**GREENAWAY, JR., U.S.D.J.**</u>

      This matter comes before this Court on the motion for default judgment by plaintiff Super 8 Motels, Inc. ("Plaintiff" or "Super 8") against defendant AUM Corporation of Painted Post, New York ( "AUM"), as well as defendants Kishor Patel, Bharti Patel, Harish Patel, Sanjay Patel and Tarulata Patel (collectively, the "Individual Defendants"), pursuant to Federal Rule of Civil Procedure 55(b). Plaintiff seeks damages for an alleged breach and premature termination of a license agreement between Plaintiff, AUM, and Individual Defendants. Plaintiff also seeks treble damages, pursuant to the Lanham Act, 15 U.S.C. §§ 1111-1129 for the alleged unauthorized use of the Plaintiff's trademarks.

## I. FACTS

Super 8 operates a guest lodging facility franchise system. (Aff. of Kelly Krug ("Krug Aff.") at ¶ 3.) Super 8 has the exclusive right to sublicense the use of various trade names and service marks, located on the principal register of the United States Patent and Trademark Office. (Id. at. ¶ 5.) Pursuant to individual franchise or license agreements, Super 8 allows its franchisees to operate guest lodging facilities using the Super 8 marks and promoting Super 8's brand name. (Id. at ¶ 4.)

On November 19, 2001, Super 8 and AUM entered into a franchise agreement (the "Franchise Agreement" or "Agreement") for the operation of a 61-room guest lodging facility located at 255 South Hamilton Street, Painted Post, New York, Site No. 03636 ( the "Facility"). (Id. at  ¶ 8.) The terms of the Agreement obligated AUM to operate, inter alia,  a Super 8 franchise using Super 8's marks for a twenty year term; "make renovations to the Facility, in order to bring the Facility into compliance with 'System Standards,' 'Approved Plans,' and/or a 'Punch List'"; and "make certain periodic payments to Super 8 for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees and other fees (collectively "Recurring Fees"). (Id. at ¶¶ 9-10.)

The Franchise Agreement also provides that Super 8 may terminate the Agreement, after providing notice to AUM, "for various reasons, including AUM's (a) failure to pay any amount due Super 8 under the Franchise Agreement; (b) failure to remedy any other defaults of its obligations or warranties under the Franchise Agreement; and (c) receipt of two or more notices under the default agreement in any one year period, whether or not the defaults were cured." (Id. at ¶ 18.)

In addition to AUM's responsibilities, the Individual Defendants provided Super 8 with a Guaranty of AUM's obligations under the Franchise Agreement. (Id. at ¶ 26.) Under the Guaranty, the Individual Defendants agreed that, upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or underperformed obligation." (Id. at ¶ 27.) The terms of the Guaranty personally bound the Individual Defendants to Section 17 of the Franchise Agreement, which provided for payment of remedies, including reasonable attorney's fees, incurred by Super 8 in enforcing its rights under both the Guaranty and Franchise Agreement. (Id. at ¶ 28.)

Super 8 alleges that AUM failed quality assurance ("QA") inspections on four consecutive occasions.[1] (Id. at ¶¶ 29-32.) In March 2005, AUM refused to allow a re-inspection of the facility, which, in addition to the previous failures, constituted a breach of the Franchise Agreement. (Id. at ¶ 33.) AUM also failed to provide Super 8 with proof that it had obtained the minimum insurance coverage required under the agreement. (Id. at ¶ 34.)

Super 8 also alleges that beginning in 2005 AUM failed to pay the Recurring Fees and charges required under the Franchise Agreement. (Id. at ¶ 37.) Super 8 sent three separate letters prior to terminating the Franchise Agreement informing AUM that it was in breach of the Franchise Agreement and had 30 days to cure the monetary default.[2] (Id. at ¶¶ 38-39.) The last of those three letters gave AUM 10 days to cure default before the agreement was terminated.

---

[1] The failed inspections occurred on July 9, 2003; November 7, 2003; January 15, 2004; and September 22, 2004. (Krug Aff. at ¶ 13.)

[2] Notice of default letters were sent to AUM on April 29, 2005; June 30, 2005 and finally on December 1, 2005.

(Id. at ¶ 40.)

Super 8 terminated the Franchise Agreement in a letter dated December 29, 2005 and advised AUM to perform its post-termination obligations, including "removal of all items displaying or referring to Super 8 Marks, and discontinuance of the use of all forms of advertising and other indicia of operation as part of the Super 8 System." (Id. at ¶ 41.) Super 8 alleges that AUM failed to de-identify the Facility, as required under the Franchise Agreement, until March 14, 2007, "despite receiving repeat notices from Super 8 to do so." (Id. at ¶ 42-48.) Since the termination of the Franchise Agreement, AUM and Individual Defendants have failed to pay the liquidated damages and Recurring Fees owed.

## II. JURISDICTION

Before entering a final judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

This court has subject matter jurisdiction over the present case, pursuant to 28 U.S.C. § 1332. Plaintiff and AUM are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, Super 8 is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey. (Compl. ¶ 1.) AUM is a corporation organized under the laws of the State of New York, with its principal place of business in New York.[3] (Id. at ¶ 2.) Kishor Patel,

---

[3] This Court also has subject matter jurisdiction as a result of Super 8's Lanham Act claim, pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §1121. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to

Harish Patel, Bharti Patel, Tarulata Patel, and Sanjay Patel, are all citizens of the State of Massachusetts. (Id. at ¶ 3-7.)

To ascertain whether or not a court has personal jurisdiction, a federal court sitting in diversity must conduct a two-step analysis. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates Due Process under the Fourteenth Amendment. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

In this forum, the inquiry is collapsed into a single step because New Jersey's long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States. As such, federal law defines the parameters of this Court's in personam jurisdiction. IMO Indus., Inc., 155 F.3d at 259. The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)). The plaintiff has the burden of proving that the defendant purposefully availed itself of the forum state. Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997)).

Personal jurisdiction, however, is a right that can be waived by the parties. Ins. Corp. of

---

patents, plant variety protection, copyrights and trademarks."); 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction...of all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.").

Ireland, Ltd. V. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982).  A forum selection clause in a contract is one way to effectuate this waiver. Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1963).

This Court has personal jurisdiction over AUM by virtue of the forum selection clause in the Franchise Agreement, which includes a waiver of objections to personal jurisdiction. Specifically, Section 17.6.3 of the Franchise Agreement states that AUM "consent[s] and waive[s] [its] objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between [Super 8] and [AUM or Individual Defendants]." (Franchise Agreement, attached as Ex. A to Krugg Aff. at 19.) In addition, the Guaranty Agreement incorporates the forum selection clause with respect to the Individual Defendants.  (Guaranty, attached as Ex. C to Amended Compl.)

"[I]n a federal forum, the enforceability of a forum selection clause is determined by a generally applicable federal law." Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 201 (3d Cir. 1983) (cert. denied, 464 U.S. 938 (1983), overruled on other grounds; Lauro Lines S.R.L. v. Chaser, 490 U.S. 495 (1989). This Court must look to federal law in determining whether to enforce the forum selection clause in the Franchise Agreement.

The Supreme Court of the United States has held that "[forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). This rule reflects the principle that courts should enforce freely negotiated contract terms, and give effect to the legitimate expectations of the parties. M/S Bremen, 470 U.S. at 12.

Expanding on this ruling, the Third Circuit has adopted the following three-step test:

> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel, 709 F.2d at 202 (quoting M/S Bremen, 407 U.S. at 12-13). A court may refuse to enforce a forum selection clause if any of the factors have been demonstrated. Id.

In this case, AUM consented to personal jurisdiction in New Jersey by signing, and agreeing to, the Franchise Agreement. Likewise, Individual Defendants consented to personal jurisdiction when signing the Guaranty, which incorporates by reference the forum selection clause. Because none of the M/S Bremen factors are present here, this Court concludes that the forum selection clause is valid. This Court has personal jurisdiction over AUM.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs the entry of default judgment. The rule states:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trail–when, to enter or effectuate judgment it needs to:
>
>   (A) conduct an accounting;
>   (B) determine the amount of damages;
>   (C) establish the truth of any allegation by evidence; or
>   (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2). "The Federal Rules of Civil Procedure commit the entry of a default

judgment against a party to the sound discretion of the trial court." F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 11 (8th Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. Flak v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). The district court may conduct a hearing to determine the amount. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.2d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of records, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12 (1944).

## IV. ANALYSIS

### A.     Default Judgment

AUM and Individual Defendants have failed to appear, or otherwise plead, in response to the Amended Complaint Plaintiff filed on December 6, 2007, and personally served on AUM and Individual Defendants by a process server on January 25, 2008 and December 22, 2007 respectively.  (See Docket Entries No. 9-13, 16.)  AUM and Individual Defendants also failed to respond to the instant motion, which was filed on July 18, 2008 and served via Federal Express overnight delivery.  Therefore, this Court finds that default judgment against AUM and Individual Defendants is appropriate, pursuant to Federal Rule of Civil Procedure 55(b)(2), on all counts of the Complaint.

### B.     Damages

Plaintiff requests the following damages: $123,000 in liquidated damages and interest on the past due amount at a rate of 1.5% per month (Compl. Ex. A at 10.), or actual damages in lieu of liquidated damages based on the termination of a twenty year Franchise Agreement; $63,095.75 in unpaid Recurring Fees; profits, royalties and additional Recurring Fees for the period between December 2005 and March 2007 to compensate Super 8 for AUM's misuse of Super 8's marks; and attorney's fees and costs.  Plaintiff also seeks treble damages, pursuant to the Lanham Act, 15 U.S.C. § 1117(a).

Section 12.1 of the Franchise Agreement provides for liquidated damages of no "less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility."  (Compl. Ex. A at 14.)  The calculation of such damages is $2,000 * 61 guest rooms = $122,000. As such, Super 8's liquidated damages request complies with the terms of the Franchise Agreement.  Super

8 also requests an additional $1,000 in liquidated damages owed in accordance with an addendum to the original License agreement for Satellite Connectivity Services (the "Addendum"). (Addendum, attached as Ex. B to Krug Aff. at 2.) AUM and the Individual Defendants are therefore required to pay $123,000 in liquidated damages to Plaintiff.

Section 7.3 of the Franchise Agreement requires AUM to pay interest at a rate of 1.5% per month (or 18% per year) on "any past due amount payable to [Super 8]." (Ex. A to Krug Aff. at 10.) As a result, this Court finds that Super 8 is entitled to receive interest on the liquidated damages, for the period between January 28, 2006[4] and August 18, 2008[5], in the amount of $56,647.10. Super 8 is also entitled to $6,974.75 for the interest that accrued from August 19, 2008 to the date of this Order, November 14, 2008.

Section 7 of the Franchise Agreement outlines the various Recurring Fees AUM is obligated to pay. (Compl. Ex. A at 9.) These fees include royalties, a system assessment fee, taxes and interest. Super 8 seeks damages of $63,095.75 in Recurring Fees, exclusive of interest, and separate from the damages sought, pursuant to the Lanham Act. (Compl. ¶ 84.) Plaintiff admits that it cannot determine AUM's gross room revenue during the period of infringement, and therefore cannot ascertain what Recurring Fees it would have been entitled to based on that revenue. Instead, Plaintiff's request for Recurring Fees is based on the average Recurring Fee incurred by AUM on its gross room revenue. Plaintiff has failed to provide proof of the average

---

[4] August 18, 2008 is the return date for this motion.

[5] Super 8 terminated the Franchise Agreement on December 29, 2005; therefore, the unpaid liquidated damages became past due on January 28, 2006. (Ex. B of Krug Aff.) ("If [Super 8] terminate[s] the License or this Agreement under Section 11.2, . . . [AUM] will pay us within 30 days following the date of termination, as Liquidated Damages . . ..")

Recurring Fees owed by Defendant up to termination of the Franchise Agreement on December 29, 2005. In addition, Plaintiff's documentation attached as Exhibit H to Affidavit of Kelly Krug does not clearly indicate that the amount Plaintiff claims to be the average Recurring Fees does not include the interest owed by Defendant on the past due balance. As such, this Court reserves judgment on the amount of Recurring fees owed by Defendant during the period of default under the Franchise Agreement.

Section 17.4 of the Franchise Agreement states that the "non-prevailing party will pay all costs and expenses, including reasonable attorney's fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Compl. Ex. A at 19). However, Plaintiff has not provided sufficient documentation to assure this Court as to the amount of attorney's fees and costs. See L. Civ. R. 53.2 (requiring an affidavit setting forth, inter alia; "(1) the nature of the services rendered,...(2) a record of the dates of services rendered[,] (3) a description of the services rendered on each of such dates by each person of that firm...(4) the time spent in the rendering of each of such services [,] and (5) the normal billing rate for each of said persons for the type of work performed."). This Court will reserve judgment on this amount.

Finally, Section 35 of the Lanham Act states that

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office..shall have been established in any civil action arising under this Act, the plaintiff shall be entitled...to recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction...In assessing the damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.

15 U.S.C. § 1117(a). While this Court may, in its discretion, award damages, pursuant to the Lanham Act, Plaintiff has failed to provide sufficient documentation for this Court to calculate

11

the amount of damages owed for the period of infringement, which runs from December 29, 2005 through March 14, 2007.  Plaintiff correctly notes that, without discovery, it is difficult to determine the Facility's gross room revenue, or the amount of Recurring Fees due to Plaintiff, during the infringement period; however, Plaintiff fails to provide this Court with documentation to support its calculation of the average gross revenue and Recurring Fees AUM paid over the term of the License Agreement. (See Statement In Lieu Of Brief at 4.) As such, this Court reserves judgment on the amount of damages due, pursuant to the Lanham Act.

## V. CONCLUSION

For the reasons stated above, the motion of Plaintiff Super 8 Motels, Inc., for default judgment against AUM and Individual Defendants is granted.


       S/Joseph A. Greenaway, Jr.
       JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: November 14,  2008